WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Gregory A. Batterton,<br><br>                Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>                Defendant. | No. CV-15-01319-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Gregory A. Batterton's ("Batterton") appeal challenging the Social Security Administration's decision to deny benefits. (Doc. 13.) For the reasons set forth below, the Court affirms that decision.

**BACKGROUND**

Batterton was injured in a car accident when he was eighteen years old. (Tr. 32.) For fourteen to fifteen years, he worked primarily as a building maintenance repair man and a home painter. (Tr. 51.) However, over the last few years he was forced to reduce the hours he worked due to the pain from his earlier injuries. (Tr. 56.) He does not currently work, and he has not been employed since February of 2013. (Tr. 49.)

On April 2, 2012, Batterton filed an application for supplemental security income, alleging a disability onset date of April 1, 2011. (Tr. 222–31.) After Batterton's claim was denied initially and on reconsideration, he requested a hearing, which the Administrative Law Judge (ALJ), Thomas Cheffins, held on May 20, 2013. (Tr. 40–73.)

During this hearing, Batterton and a vocational expert testified. (*Id.*) On December 17, 2013, the ALJ issued a decision finding Batterton not disabled. (Tr. 24–34.)

Batterton testified that he has symptoms as a result of his impairments which prevent him from sustaining full-time employment. (Tr. 50–51.) Specifically, Batterton testified that he suffers from the inability to lift his arms or look up and down; shoulder pain which radiates down his right arm into his fingers; back pain; neck pain, and chronic, debilitating headaches. (Tr. 50–52, 54–55, 57.) He asserts that narcotic pain medication causes him side effects such as dizziness, nausea, bad dreams, not being able to sleep well, constipation, and addiction. (Tr. 53.) Also, Batterton testified that he is unable stand for longer than ten to thirty minutes, after which he needs to lie down to get relief from the resulting pain. (Tr. 57.)

In evaluating whether Batterton was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 25–26.) At step one, the ALJ determined that Batterton meets the insured status requirements of the Social Security Act. (Tr. at 26.) At step two, the ALJ determined that Batterton had not engaged in substantial gainful activity since the alleged onset date. (Tr. 26.) At step three, the ALJ

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

determined that Batterton suffered from the severe impairments of degenerative disk disease of the cervical and lumbar spine, and chronic obstructive pulmonary disease ("COPD"). (Tr. 27.) At step four, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 28.)

At that point, the ALJ made a determination of Batterton's residual functional capacity ("RFC"),[2] concluding that Batterton could "perform light work as defined in 20 C.F.R. 404.1567(b)." (Tr. 29.) In so finding, the ALJ found that the claimant could perform work that "involves no climbing of ladders, ropes or scaffolds; no more than frequent balancing; no more than occasional climbing of ramps or stairs[,]. . . stooping, crouching, kneeling and crawling[,] and . . . bilateral overhead reaching." (Tr. 29.) The ALJ thus determined at step four that Batterton did not retain the RFC to perform any of his past relevant work. (Tr. 32–33.) The ALJ reached step five, concluding in that Batterton could perform a significant number of other jobs in the national economy despite his limitations. (Tr. 33–34.) Given this analysis, the ALJ concluded that Batterton was not disabled. (Tr. 34.)

The Appeals Council declined to review the decision. (Tr. 1–6.) Batterton filed the complaint underlying this action on August 15, 2015, seeking this Court's review of the ALJ's denial of benefits.[3] (Doc. 13.) The matter is now fully briefed. (Doc. 15, 16.)

**DISCUSSION**

**I.  Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is

---

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

[3] Batterton has authority to file this action pursuant to 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II. Analysis**

On appeal, Mr. Batterton argues that the ALJ erred by rejecting his symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. (Doc. 13 at 10.) He also asserts that the appropriate remedy in this case would be to vacate the ALJ's ruling and to remand this matter for a determination of benefits. (Doc. 13 at 17.) For the following reasons, the Court affirms the ruling of the ALJ.

**A. The ALJ provided "Specific, Clear, and Convincing" Reasons for Finding that Batterton's Symptom Testimony was not Credible.**

The ALJ must engage in a two-step analysis when determining whether a claimant's testimony regarding his subjective pain or symptoms is credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If he has, and the ALJ has found no evidence of malingering, then

the ALJ may reject the claimant's testimony only by "specify[ing] which testimony [he] finds not credible," *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015), and "by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

In determining whether the claimant's testimony regarding his symptoms credible, the ALJ can consider a multitude of factors, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d at 1284. Furthermore, "[i]f the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner." *Lingenfelter*, 504 F.3d at 1035.

At the first step, the ALJ found that Batterton's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. at 29.) However, at the second step, the ALJ found that Batterton's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (*Id.*) The parties concede that the ALJ specifically identified which testimony he finds not credible. Thus, the issue here is whether the ALJ offered "specific, clear and convincing reasons" for rejecting the testimony as not credible. *Brown-Hunter v. Colvin*, 806 F.3d 487.

The ALJ offered the following reasons for finding Batterton's symptom testimony not credible: (1) Batterton's testimony was inconsistent with the notes in his medical files (2) his sporadic treatment of his chronic headaches undermines the level of pain he claims to experience from them, (3) Batterton's daily activities, including work activity, undermine his credibility, and (4) Batterton worked for many years with the same impairment. The Court will address each of these below.

/ / /

### 1. The ALJ established that the inconsistencies between Batterton's testimony and his medical files undermined his credibility.

An ALJ may utilize "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid" when determining whether a claimant's testimony is credible. *Smolen*, 80 F.3d at 1284. Furthermore, when the record could lend itself to "an interpretation more favorable" to the claimant, the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (internal citations and quotations omitted).

The ALJ determined that "[w]hile the claimant's testimony was generally credible, his self-imposed limitations are not supported by the record." (Tr. 32.) Batterton testified at his hearing that he cannot be on his feet for more than thirty minutes to an hour at a time due to his neck pain. (Tr. 57.) Batterton also testified that he must lay down every morning, and preferably every afternoon that he can as well. (Tr. 57–58.) Batterton claimed these naps were necessary because he did not sleep at night due to the pain. (Tr. 58.) However, this level of neck pain is inconsistent with the majority of the medical records cited by the ALJ in his opinion. (Tr. 32.) For example, Batterton told his doctors that he could not walk more than a block at a time due to his shortness of breath and chest pain, not because of neck pain. (Tr. 30, 315.) Additionally, according to his medical records, Batterton was sleeping well and feeling better after treatment for his depression. (Tr. 31, 390.) Batterton also denied lower back pain and neck pain on various occasions, including an instance where he sought treatment for his insomnia. (Tr. 30, 390, 435.)

The ALJ also noted that Batterton made inconsistent statements to his medical providers regarding the nature of his various illnesses. (Tr. 30.) For example, Batterton told health care providers that he was diagnosed with lung cancer by his primary care physician, Dr. Fernando. (Tr. 30, 315) He also told them that he lost 50-60 pounds in a

time span of 5-7 months. (Tr. 30, 315) However, when staff received Batterton's medical history, Dr. Fernando's notes indicated a normal chest-x-ray and no mention of lung cancer or rapid weight loss. (Tr. 30, 317.) These prior inconsistent statements also weigh against Batterton's credibility.

The ALJ's determination that Batterton's statements to his treating physicians are not entirely consistent with his testimony at his hearing is supported by substantial evidence. The record may also lend itself to "an interpretation more favorable" to Batterton, but the ALJ's position must be upheld where there is "more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d at 680–81 (internal citations and quotations omitted). The ALJ offered "specific, clear and convincing reasons" supporting his finding that Batterton's testimony was not credible due to inconsistencies between his testimony and the record, and thus the ALJ's interpretation stands. *Brown-Hunter v. Colvin*, 806 F.3d at 487.

### 2. The ALJ properly determined that the sporadic treatment of Batterton's chronic headaches undermined his credibility.

The ALJ noted in his analysis that while the claimant's cervical issues made it plausible that he could experience chronic headache pain, his allegations regarding the "frequency and intensity of these headaches is somewhat undermined by the fact that he has only reported and sought treatment for these headaches sporadically." (Tr. 32.) He also noted that treating physicians described Batterton as "functioning well" in 2011 and 2012. (Tr. 32.)

"[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" may be considered by the ALJ when determining credibility. *Smolen*, 80 F.3d at 1284. The treatment a claimant receives for a proposed disability is an "important indicator of the intensity and persistence" of his symptoms. 20 C.F.R. § 404.1529(c)(3). Therefore, an ALJ may consider "all of the evidence presented," including the claimant's statements about his symptoms, treatments pursued, and observations by third parties. *Id*.; *see also Smolen*, 80 F.3d at 1285 (including

"observations by treating and examining physicians and third parties about the claimant's symptoms and their effects" as an appropriate consideration for ALJs during the credibility analysis.)

Batterton testified that he only has one or two days a month without suffering from a severe headache. (Tr. 52.) He also testified that he cannot drive for more than thirty minutes without developing a headache. (Tr. 60.) However, the ALJ noted that Batterton's medical record indicates that he rarely sought relief from headache pain during his numerous medical visits, and he often did not mention his headache pain at all. (Tr. 32; *see also* Tr. 316, 373, 430, 434, 435.) This is inconsistent with Batterton's descriptions of daily debilitating headache pain, and the ALJ properly determined that Batterton's testimony was not credible given his failure to consistently report the severity of pain described in his testimony. (Tr. 32.)

The ALJ also considered observations by Batterton's treating physicians, including Dr. Frevert and Dr. Bennett. (Tr. 30–31.) Dr. Bennett determined that Batterton should not be prescribed opiates, and that this was a condition that that he would have to live with. (Tr. 31, 373.) Dr. Bennett went on to note that Batterton was smiling and in good spirits, and then prescribed him over the counter medications to treat Batterton's pain. (Tr. 31, 373.) Likewise, Dr. Frevert noted that Batterton had complications from a "previous trauma," but Batterton never mentioned headache pain or neck pain during his visit. (Tr. 30, 390.) He had a complaint regarding cold feet, but it did not "seem to be too bothersome a symptom to the patient." (Tr. 30, 390.)

The ALJ properly supported his finding that Batterton's headache claims were undermined by sporadic treatment by outlining "specific, clear and convincing reasons" for his decision. *Brown-Hunter v. Colvin*, 806 F.3d 487. Furthermore, these reasons are supported by substantial evidence. Therefore, the ALJ's reasoning is upheld.

/ / /

/ / /

/ / /

### 3. The ALJ provided insufficient reasoning for finding that Batterton's daily activities undermined his credibility.

In his analysis, the ALJ in this case determined that the "wide range of activities" performed by Batterton discredited his testimony. "To determine whether the claimant's testimony regarding the severity of [his] symptoms is credible, the ALJ may consider . . . the claimant's daily activities." *Smolen*, 80 F.3d at 1284. Where a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

However, "a disability claimant need not 'vegetate in a dark room' in order to be deemed eligible for benefits." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987)). The ALJ should not discredit pain testimony in a disability determination simply because a plaintiff can engage in daily activity, "such as grocery shopping, driving a car, or limited walking for exercise." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2009) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain."). "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722.

The ALJ cited to Batterton's earlier function report in finding that Batterton's testimony regarding his limitations was discredited by his then-apparent ability "to prepare simple meals, drive, go outside, shop, spend time with others, and perform indoor and outdoor chores, but at a slower pace." (Tr. 32.) However, the function report doesn't just claim that it takes Batterton longer to do things; the function report claims that it takes Batterton longer to do these activities because they cause him constant pain. (Tr. 277, 278.) Furthermore, in the report cited by the ALJ, Batterton claims that "I have to

- 9 -

1  encourage myself to get up and do these things cause I know it's going to hurt my next
2  day or so."  (Tr. 278.)  This is largely consistent with Batterton's testimony at the
3  hearing that while he can do some things around the house, the pain typically leads him
4  to asking for help. (Tr. 61.)

5  The level of activity described by Batterton in the function report is not
6  "inconsistent with Claimant's claimed limitations," and therefore it should not "have any
7  bearing on Claimant's credibility."  *Reddick,* 157 F.3d at 722.  The ALJ did not provide
8  any further explanation for why Batterton's activities undermined his credibility.  (Tr.
9  32.)  Therefore, the ALJ failed to present specific, clear and convincing reasons
10 supporting his finding that Batterton's testimony was not credible due to his described
11 activity levels, and thus his reasoning is rejected.  *Brown-Hunter v. Colvin*, 806 F.3d 487.

### 4. The ALJ properly determined that Batterton's testimony was undermined by his ability to work for several years with the same impairment.

15 The ALJ noted that Batterton continuously claimed that the car accident causing
16 his injuries occurred when he was eighteen years old, and yet they never interfered with
17 his ability to work until recent years.  (Tr. 32.)  An ALJ may "consider whether there are
18
19 any inconsistencies in the evidence and the extent to which there are any conflicts
20 between [claimant's] statements and the rest of the evidence, including [claimant's]
21
22 history." 20 C.F.R. § 404.1529(d)(3).  This includes whether a claimant was capable of
23 working with the same impairment prior to filing for benefits.  *See Gregory v. Bowen*,
24 844 F.2d 664, 667 (9th Cir. 1988) (noting that "substantial evidence" indicated that the
25
26 claimant's condition "had remained constant for a number of years and that her back
27 problems had not prevented her from working over that time.")  Therefore, when there is
28 "considerable evidence. . .that claimant has suffered these problems, while working, for

many years," it may cut against his testimony's credibility. *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

Batterton consistently stated that his injuries occurred during a car accident when he was eighteen years old. (Tr. 32, 371, 395, 415.) Batterton also alleged that his first severe headaches occurred twenty-eight years ago, yet he was capable of earning a steady wage in active professions at that time. (Tr. 32, 285, 237.) For the last fourteen to fifteen years, Batterton was employed in various home maintenance roles, from window washing to house painting. (Tr. 51.) The ALJ in this case noted that evidence that Batterton had "suffered these problems, while working, for many years," cut against his credibility in claiming that his current pain level made it impossible for him to work at all. *Goodermote*, 690 F.2d at 7. The ALJ cited to the record and to Batterton's own admissions to present specific, clear and convincing reasons supporting his finding that Batterton's longstanding injury discredited his claim that it suddenly worsened to the point where he could not work at all. (Tr. 32.) Therefore, the ALJ's finding will be upheld.

### B. The ALJ's Error Was Harmless, Therefore the Ruling of the ALJ is Affirmed.

Once it has been determined that an ALJ made an error during the review of a claimant's file, the next step is to determine whether the error was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying the harmless error standard after determining that two of the ALJ's reasons supporting his adverse credibility finding were invalid). An error is harmless where it "does not negate the validity of the ALJ's ultimate conclusion that [claimant's] testimony was not credible." *Batson*, 359 F.3d at 1197. Therefore, so long as "substantial evidence

supporting the ALJ's conclusions" regarding the claimant's credibility exists, the error did not affect the ALJ's ultimate conclusion, and remand is not required. *Id.*; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal citations and quotations omitted).

Typically, the rejection of one rationale for discrediting a claimant's testimony is insufficient for rejecting the entirety of the ALJ's analysis. *See Carmickle*, 533 F.3d at 1163; *Batson*, 359 F.3d at 1197 (finding that striking down one justification for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented other reasons for discrediting the testimony that were supported by substantial evidence in the record). In *Carmickle*, the Ninth Circuit rejected two of the ALJ's rationales supporting his adverse credibility finding, and still found the ALJ's errors to be harmless. *Carmickle*, 533 F.3d at 1163. The Ninth Circuit explained that because the ALJ presented other reasons for rejecting the credibility of the claimant's testimony that were supported by substantial evidence in the record, the ALJ's error was harmless. *Id.*

The ALJ presented three valid reasons for discrediting the claimant's testimony that were supported by substantial evidence, and thus the ALJ's singular error is harmless. As in *Carmickle* and *Batson*, the rejection of one rationale does not negate three other specific, clear, and convincing reasons. (Tr. 32.) Therefore, the ALJ's determination that Batterton's symptom testimony was not credible is affirmed.

## CONCLUSION

The ALJ improperly concluded that Batterton's daily activities undermined the credibility of his symptom testimony. However, the ALJ provided other substantial evidence of specific, clear and convincing reasons for why Batterton's testimony was not credible.

/ / /

/ / /

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk of Court is directed to enter judgment accordingly.

Dated this 15th day of November, 2016.

_____
Honorable G. Murray Snow
United States District Judge

- 13 -